# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 21-662V

|  |  |
|---|---|
| JEAN SODERSTROM,<br><br>                Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br><br>Filed: February 13, 2026 |

*Matthew F. Belanger, Farci Lange, LLP, Rochester, NY, for Petitioner.*

*Tyler King, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On January 12, 2021, Jean Soderstrom filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.* (the "Vaccine Act").[2] Petitioner alleges that as a result of an influenza ("flu") vaccine received on November 8, 2018, she suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this ruling and decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, I find that Petitioner has carried her burden of proof in establishing that she suffered a Table SIRVA injury, and therefore is entitled to compensation.

## I.   Relevant Procedural History

This claim was initiated on January 12, 2021. (ECF No. 1). Petitioner subsequently filed medical records as well as signed declarations supporting her claim on January 26, 2021, and February 15, 2023. (ECF Nos. 5, 37). On December 7, 2022, Respondent filed his Rule 4(c) Report in which he contested entitlement. (ECF No. 35). On November 1, 2023, the staff attorney managing this case held a status conference with the parties, which was memorialized in a scheduling order issued on the same day. (ECF No. 42). During this status conference, the staff attorney informed the parties that based on the evidence in the record, I would likely find that preponderant evidence existed that 1) Petitioner received the flu vaccination in her left deltoid on November 8, 2018; 2) that onset of Petitioner's symptoms began within 48-hours of this vaccination; and 3) that I would likely find Petitioner's pain was limited to her left shoulder. *Id.* at 2. Given this, I urged the parties to consider settlement discussions. *Id.* at 3.

On November 15, 2023, Respondent filed a status report indicating that he intended to continue defending the case, and requested a briefing schedule to decide entitlement. (ECF No. 43). On January 25, 2024, Petitioner filed a Motion for Ruling on the Record on Entitlement. (ECF No. 44). Respondent filed his response brief on April 8, 2024. (ECF No. 47). Petitioner filed a Reply brief on April 12, 2024. (ECF No. 48). The matter is now ripe for disposition.

## II.   Relevant Medical History

### A.  Medical Records

Petitioner's pre-vaccination medical history includes possible fibromyalgia, anxiety with panic disorder, depression, pre-diabetes, hyperlipidemia, coronary artery disease with angina, headaches, bradycardia, and traumatic blindness in the right eye. Ex. 3 at 81 – 82, 107, 124, Ex. 12 at 30 – 33. There is no record evidence of a prior left shoulder injury.

On November 8, 2018, Petitioner had an appointment with her primary care provider ("PCP") John Bedell, M.D., for a follow up regarding anxiety and medication refill. Ex. 12 at 26 – 29. A physical examination revealed pain in her palms. *Id.* at 28. At the end of the record under "Goals" section the need to receive the flu vaccine was noted, although there is no indication it was in fact administered. *Id.* at 29. Additionally,

handwritten and illegible records reflecting dates of medical visits were submitted. Ex. 2. The date in question, November 8, 2018, reveals only measurements of Petitioner's blood pressure, height and weight. *Id.* at 1. The next entry on this record is from December 6, 2018, and it notes "L arm pain," and again lists Petitioner's height, weight and blood pressure. *Id.* Two additional dates are identified on the records and are cut off the slanted copy. *Id.* The next legible date is listed as February 2, 2019, describing left shoulder pain and what may be either "f/u" or "flu" November 8th. *Id.* at 2.

On December 6, 2018 (now 28 days post vaccination), Petitioner returned to Dr. Bedell for a follow up on her anxiety, medication refill, and treatment of "left shoulder pain since flu shot last month." Ex. 12 at 22. There is no physical examination reported on the record. Dr. Bedell noted Petitioner had "left shoulder pain" and provided a treatment plan of Voltaren gel, ice and an x-ray. *Id.* at 24 – 25.

On January 3, 2019, Petitioner returned to Dr. Bedell for a follow-up appointment and complained of left shoulder pain "since flu shot two months ago." Ex. 12 at 18. There was no physical examination. Dr. Bedell noted Petitioner had "left shoulder pain" and provided a treatment plan of Voltaren gel, ice, an x-ray and physical therapy. *Id.* at 21. An x-ray was performed on January 4, 2019, and was unremarkable. Ex. 4 at 9.

On January 5, 2019, Petitioner went to the emergency department for complaints of "left arm pain post flu shot 2 months ago." Ex. 5 at 10.  Petitioner reported "after getting the shot she went to reach for her phone and felt pain in her triceps." *Id* at 16. Upon examination, Petitioner had full range of motion and there were no signs of infection or acute distress. *Id.* at 12. The impression was "shoulder pain" caused by inflammation, an injury to a shoulder joint, tendon, ligament or bone. *Id.* at 19.

Petitioner returned to the emergency department on January 10, 2019, for "worsening" left shoulder pain over the past two months. Ex. 5 at 21. Petitioner reported the pain began after receiving a flu vaccination, and described it as "aching, non[-] radiating, 5/10 [and] worse with movement." *Id.* A physical exam showed tenderness and swelling in the left shoulder. *Id.* at 23 – 24. Petitioner was advised to rest, use ice, anti-inflammatory medications and follow up with her PCP. *Id.* at 24.

On January 31, 2019, Petitioner had a follow up appointment with Dr. Bedell for anxiety, medication refills, and left shoulder pain. Ex. 12 at 14. Petitioner had complaints of "left shoulder pain since flu shot two months ago," and reported that she could not lift her arm, the pain was consistent, and described it as feeling like "a toothache in her arm." *Id.* Dr. Bedell noted Petitioner had "left shoulder pain" and provided a treatment plan of Voltaren gel, ice, MRI, orthopedic referral and physical therapy. *Id.* at 17. That same day

3

an MRI was performed finding adhesive capsulitis, mild fluid distention of the biceps tendon sheath, and small subacromial subdeltoid bursitis. Ex. 3 at 10 – 11.

On February 2, 2019, Petitioner returned to her PCP's office and met with Carolyn Castiglia, M.D., with complaints of left arm and shoulder pain "since flu shot almost 3 months ago." *Id.* Physical examination showed joint and muscle pain with tenderness in the joint. *Id.* at 11. Dr. Castiglia's impression was left shoulder pain and adhesive capsulitis. *Id.* at 12. A ketorolac tromethamine injection was performed and tolerated well. *Id.* at 13.

Petitioner returned to the emergency department on February 5, 2019, for treatment of left shoulder and deltoid pain "since flu shot in November." Ex. 5 at 39. Her pain was rated a 6/10. *Id.* at 40. Petitioner reported "she had a flu shot on her left deltoid on November 8th, 2018. She stat[ed] that a week after that, she started having left arm pain. She stat[ed] that pain is achy [,] 5/10 [and] worsening with movements." *Id.* at 46. Petitioner also reported she had an MRI and a referral for an orthopedist, however, was moving out of state in a few days and would establish care after that. *Id.* at 49. Physical examination showed limited range of motion due to pain, tenderness to palpitation and normal strength. *Id.* at 48. She was prescribed Mobic and physical therapy and was to follow up in six weeks. *Id.*

On February 21, 2019, Petitioner established care with Nathaniel Evans, M.D., for left shoulder pain. Ex. 7 at 8. Petitioner reported that she had "pain in her shoulder since 11/2018 after receiving a flu shot" and that her "symptoms have been increasing gradually since." *Id.* at 10. Physical examination showed pain and weakness with empty can test, weakness with resisted internal or external rotation but normal strength. *Id.* at 11. Dr. Evans assessment was left shoulder adhesive capsulitis. *Id.* Petitioner received a cortisone injection. *Id.* Petitioner was prescribed Meloxicam and got a physical therapy referral. *Id.* at 11 - 12.

Petitioner began treatment at Advanced Medical Solutions[3] on February 28, 2019, for left shoulder pain. Ex. 8 at 42. She reported that she "had flu shot in November then a week later had gradual shooting pain going down arm. Feels like a toothache affecting many different areas and was diagnosed with frozen shoulder." *Id.* Petitioner described the pain as "dull", "stabbing", "shooting", "sharp", "ache" and rated the pain as a 10/10. *Id.* She continued to report neck pains, moderate tension headaches and tension between shoulder blades. *Id.* at 42 – 43. Physical examination showed severe tenderness and pain

---

[3] It is unclear what procedures this facility performs. Petitioner refers to these appointments as "physical therapy" in her second declaration. Ex. 13 at 1. Respondent refers to these appointments as meeting with a "chiropractor." Respondent's Report, ECF No. 35 at 4.

and restriction of the left shoulder. *Id.* at 44. Between February 28 – May 7, 2019, Petitioner had 12 sessions with a chiropractor. *Id.* at 5 – 45.

On May 29, 2019, Petitioner returned to Dr. Evans with complaints of continued left shoulder pain. Ex. 7 at 19. Petitioner reported "only minor improvement in pain" and that "the shoulder is very painful after home exercises, and so she ha[d] discontinued these." *Id.* at 20. Physical examination showed some improvement but still limited range of motion. *Id.* at 21. An MRI was performed on May 15, 2019, and Dr. Evans reviewed the results showing some subacromial bursitis, an intact rotator cuff, and findings consistent with adhesive capsulitis. *Id.* Dr. Evans assessment was left shoulder adhesive capsulitis, and it was recommended she resume her home exercises on a daily basis. *Id.*

### B. Personal Statements

Petitioner has submitted two declarations in support of her claim. The declaration filed into the record on January 26, 2021, confirmed she had no pre-existing conditions in her left arm. Ex. 1. Petitioner stated that the day after receiving her vaccination she "developed a very sharp pain in [her] left shoulder that [she] first noticed as [she] reached for [her] phone." *Id.* at 1. Although she was "concerned," she thought the pain would resolve with time. *Id.* at 2. Petitioner then summarizes the events of the medical records through May 2019. *Id.* at 1 – 3.

On February 15, 2023, Petitioner filed a second signed declaration in support of her claim. She reiterated some of the facts from the first declaration, and addressed the hospital record dated January 5, 2019, in which it was recorded the pain started one week after her flu vaccination. Petitioner claims this is "inaccurate" and not what she informed the provider. *Id.* at 1. Petitioner confirmed that her "pain started one <u>day</u> after [her] flu shot, not one week after it." *Id.* (emphasis in original).

### III. Parties' Respective Arguments

Petitioner argues that preponderant evidence establishes that she received a flu vaccine in her left arm on November 8, 2018, that she had onset of symptoms within 48 hours after vaccination, and that she is accordingly entitled to compensation for his Table SIRVA claim. Motion at 2. Respondent contends that Petitioner has failed to establish that she received a flu vaccine on November 8, 2018, that she has failed to preponderantly establish that the onset of her symptoms was within 48-hours of this vaccination, and that she has failed to establish that her symptoms were limited to her left shoulder. Response at 7-8.

## IV.    Applicable Law

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined.

*Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

## V.    Analysis

### I.    Fact Findings – Onset and Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

7

vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation, or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42

Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding Petitioner's November 8, 2018, Vaccination

Respondent contends that the records in this case do not confirm that Petitioner in fact received a flu vaccine on November 8, 2018. Response at 7. In response, Petitioner maintains that despite her best efforts, including issuing a subpoena attempting to retrieve the record, her provider, South Island Family Medicine was unable to produce the requested record. Nevertheless, Petitioner argues that the record preponderates in favor of a finding that she received the flu vaccine on November 8, 2018, based on other medical records referencing a vaccination on that date as well as her personal affidavits. Motion at 8.

Upon consideration of the record, I find that it is more likely than not that the Petitioner was vaccinated on November 8, 2018. Among the records that support this determination as follows:

- Petitioner obtained two handwritten notes from the provider that allegedly administered her a flu vaccine. One note, dated 11/8/2018, indicates that Petitioner had an appointment on that date, and a second note dated 2/2/19 references that a flu vaccination was administered on "Nov. 8." *See* Ex. 2.

- An electronically-generated record from Petitioner's November 8, 2018 visit lists as a goal of the visit "Influenza vaccination." Ex. 12 at 29.

- On December 6, 2018, Petitioner returned to South Island Family Medicine with a complaint of "left shoulder pain since flu shot last month." Ex. 12 at 22. Indeed, in all the submitted records, Petitioner consistently has consistently noted that her left shoulder symptoms began after a flu shot in November 2018. *See, e.g.,* Ex. 5 at 21; Ex. 12 at 10, 14.

- Petitioner has submitted two affidavits. The first, executed on January 19, 2021, states that she received a vaccination at the office of her PCP on November 8, 2018, and the next day developed a sharp pain in her left shoulder. Ex. 1. The second affidavit, executed on February 14, 2023, reiterates these facts and emphasizes that at subsequent medical visits, she always indicated that pain began the day after her flu shot. Ex. 13.

When presented with preponderant evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony - special masters have found sufficient proof of vaccination even in cases lacking a written contemporaneous record memorializing the event at the time of its occurrence. *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). However, evidence has found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021) *aff'd* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

In this case, the records reflect that Petitioner consistently reported left shoulder pain post-vaccination, and that she first sought treatment for these complaints less than one-month post-vaccination. And records (both handwritten and electronically generated) contain notations establishing that it was contemplated that Petitioner receive a flu vaccine on November 8, 2018, during her visit. Accordingly, the evidence preponderates

in favor of a factual finding that Petitioner received the flu vaccination in her left arm on November 8, 2018.

## B. Factual Findings Regarding a Table SIRVA

A preponderance of the evidence also supports the conclusion that Petitioner has satisfied the Qualifications and Aids to Interpretation ("QAI") requirements for a Table SIRVA.

### 1. Petitioner has no Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Here, there is no evidence that Petitioner suffered from left shoulder pain before her November 8, 2018, vaccination. Respondent has also not made any argument suggesting he believes that Petitioner had a prior left shoulder condition or injury. Accordingly, Petitioner has met the first QAI requirement.

### 2. Pain Occurs with the Specified Timeframe (Onset)

A petitioner alleging a SIRVA must show that he experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)). Respondent argues that Petitioner has failed to establish onset within the proper time frame because when she initially reported her left shoulder pain, she did so in a non-specific fashion, without describing in detail when the pain actually arose and whether it began within 48 hours of the vaccination. Response at 8. Respondent also points to two medical records which reference pain beginning in her left shoulder *one week* after vaccination, not one day as alleged. *Id.*

Based upon my review of the record, I find that the evidence preponderates, barely, in favor of a finding that onset of Petitioner's left shoulder pain began within 48 hours of Her November 8, 2018 vaccination. Although the medical records may not contain the optimal level of specificity when referring to the onset, they are largely consistent in noting that Petitioner experienced left shoulder pain "since" or "ever since" her November vaccination, with only the two records standing as contrary to Petitioner's argument. Additionally, Petitioner has submitted two sworn and notarized affidavits, in both of which she indicates that she experienced the day after her flu shot, specifically when she reached for her phone. Ex. 1 at ¶ 5; Ex. 13 at 1. Petitioner also states that she believes the references to pain starting one week were made in error by the records

11

creators because she remembers telling them that pain began one day after vaccination. Ex. 13 at 1-2.

This case is similar to *Hartman v. Sec'y of Health & Hum. Servs.*, in which I found that with regard to onset, "[w]hile the records do not expressly state that pain began within 48 hours, the descriptions of pain 'since' the vaccination are persuasive absent evidence supporting an alternative onset *outside* of that Table timeframe (or any other inciting event)." 2021 WL 4823549, at *5 (Fed. Cl. Spec. Mstr. Sept. 14, 2021). The instant case does present a closer call, due to the existence of two medical records indicating onset after a week, which is not wholly inconsistent with the other medical records noting pain "since" vaccination. However, these records, taken together with both of Petitioner's affidavits attesting to pain one day post-vaccination, is enough to find that the evidence preponderates *slightly* in Petitioner's favor on this issue and has satisfied the second QAI requirement.

### 3.  Petitioner's Pain and Limited Range of Motion was Limited to her Left Shoulder

The specific language of a SIRVA injury contained in the QAI of the Vaccine Injury Table is that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii) (QAI criteria)). Respondent argues that Petitioner's symptoms were not limited to her left shoulder because during a chiropractic session on February 28, 2019, Petitioner reported that after she had a flu shot in November of the previous year, she developed "gradual shooting pain going down [her] arm." Response at 8; Ex. 8 at 42, 47.

Although Petitioner did, at times, relate pain radiating from her shoulder down her left arm, her symptoms primarily occurred in, and originated from, her vaccinated shoulder. *See Valdez v. Sec'y of Health & Human Servs.*, No. 21-0394V, 2024 WL 1526536, at *6-7 (Fed. Cl. Spec. Mstr. Feb. 28, 2024) (finding third QAI satisfied despite pain radiating to upper arm and forearm because the petitioner *primarily* experienced a shoulder injury consistent with SIRVA); *Cross v. Sec'y of Health & Human Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Dec. 2, 2022) ("claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body, since the essence of the claim is that a vaccine administered *to* the shoulder *primarily* caused pain there") (emphasis in original). Based on the records and Petitioner's treatment course, a complaint of radiating pain in the context of a chiropractic appointment is not sufficient to establish the third QAI is not satisfied.

#### 4.  There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Once again, there is insufficient evidence in the record to suggest an alternative cause of Petitioner's left shoulder issues and Respondent does not argue that there is any evidence of another condition or abnormality, and there is no serious contention that Petitioner's initial symptoms were brought on by anything other than her vaccination. Accordingly, I find that Petitioner has satisfied the fourth QAI requirement for entitlement.

### C.  Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

As already established above, I have found that the evidence preponderates a finding that Petitioner received a flu vaccination intramuscularly on November 8, 2018. *See* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 4; Section 11(c)(1)(E) (lack of prior civil award).

Also as stated above, I have found that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). I have also found that Petitioner's pain and reduced range of motion was limited to her left shoulder. 42 C.F.R. § 100.3(c)(10). Finally, I find that there was no condition or abnormality that would explain Petitioner's symptoms after vaccination. *Id*. Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Starting from November 10, 2020 (48 hours after vaccination), the records undoubtedly demonstrate that Petitioner suffered the residual effects of her shoulder injury for more

than six months. *See* Ex. 7 at 19-21 (medical appointment on May 29, 2019, during which Petitioner complained of pain and demonstrated reduced range of motion in her left shoulder). Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find Petitioner is entitled to compensation. A damages order will be entered following the issuance of this ruling to direct the parties of the next steps in resolving damages.**

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

14